IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| IN RE: SOUTHEASTERN MILK ) | |
| ANTITRUST LITIGATION ) | |
| ) | Master File No. 2:08-MD-1000 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Judge J. Ronnie Greer |
| *Sweetwater Valley Farm, Inc., et al. v.* ) | |
| *Dean Foods Co., et al., No. 2:07-CV 208.* ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter has come before the Court on the "Plaintiffs' Motion For Award Of Attorneys' Fees, Reimbursement Of Expenses, And Incentive Awards For Class Representatives," [Doc. 1926]. The motion is supported by the declaration of Robert G. Abrams, [Doc. 1927], the declaration of Boies Schiller & Flexner, LLP, [Doc. 1927-5], the declaration of Brewer & Terry, P.C., [Doc. 1927-6], the declaration of Cohen Milstein Sellers & Toll, PLLC, [Doc. 1927-7], the declaration of Fine, Kaplan & Black, R.P.C., [Doc. 1927-8], the declaration of Hausfeld, LLP, [Doc. 1927-9], the declaration of Jessee & Jessee, [Doc. 1927-10], the declaration of Whitfield Bryson & Mason, LLP, [Doc. 1927-11], and the declaration of Freed Kanner London & Millen, LLC, [Doc. 1927-12]. The Court conducted a hearing on the motion on April 3, 2013. For the reasons set forth below, the Court GRANTS the motion and awards attorneys' fees, expenses, and incentive awards as detailed below.

**I.     Background**

This is a multi-district antitrust case involving allegations by the plaintiffs that defendants violated §§ 1 and 2 of the Sherman Act. The plaintiffs have previously entered into settlement

agreements with Dean Foods Company, Southern Marketing Agency, Inc. and James Baird, [*see* Docs. 1889, 1890], and final judgment was entered as to those defendants on June 15, 2012, [Doc. 1892]. The Court previously awarded attorneys' fees in the amount of $48,333,333.00 (one-third of the recovery from the previously settling defendants), reimbursement of expenses for class counsel in the amount of $7,408,920.00, and incentive awards for the class representatives in the amount of $10,000.00 each, [Doc. 1897].

The plaintiffs have now entered into a settlement agreement with the remaining defendants, Dairy Farmers of America, Inc., Dairy Marketing Services, LLC, Mid-Am Capital, LLC, National Dairy Holdings, LP, and Gary Hanman, (collectively "DFA Defendants"), [see Doc. 1922-3]. In short, plaintiffs have now negotiated a settlement with the remaining defendants in an amount totaling $158,600,000 and substantial structural changes with respect to how these defendants conduct their business in the Southeast. The Court has now, by order filed contemporaneously with this order, given final approval to the settlement, [Docs. 1941, 1942]. Through the motion currently pending before the Court, plaintiffs request an additional award of attorneys' fees of $52,866,666.67 from the settlement reached with the DFA defendants (one-third of the settlement), $798,237.66 as reimbursement for class counsel's unreimbursed out-of-pocket expenses, and an additional $10,000.00 incentive award for each of the class representatives.

**II.     Analysis**

    **A.     Applicable Law**

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court must ensure "that counsel is fairly compensated for the amount of work done as well as for the results achieved."

2

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Courts have broad discretion in determining an award of attorney's fees in class actions. *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996); *Rawlings*, 9 F.3d at 516.

One of two methods for calculation of attorney's fees is generally employed in the Sixth Circuit: The lodestar [1] and the percentage-of-the-fund. [2] The district court may "select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 Fed. App'x 496, 2011 WL 3792362, at *1 (6th Cir. Aug. 26, 2011) (quoting *Rawlings*, 9 F.3d at 516). The district court, however, generally must explain its "reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (internal quotation marks omitted).

This is a common fund case and plaintiffs urge the Court to apply the percentage of the fund method. As a general matter, "[t]he lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516. It appears that the trend in the Sixth Circuit is "toward adoption of a percentage of the fund method" in common fund cases. *Stanley v. United States Steel Company*, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) (quoting *Rawlings*, 9 F.3d at 515). "[T]he vast majority of courts of appeal now permit or direct district courts to use the percentage-fee in common-fund cases." *Manual For Complex Litigation Fourth* ("MCL") § 14.121. "In practice, the lodestar

---

[1] With the lodestar method, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

[2] When using the percentage-of-the-fund method, the Court simply determines a percentage of the settlement to award to class counsel. *Rawlings*, 9 F.3d at 516.

3

method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation." *Id*. At least one circuit court of appeals has recognized that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

### 1. Selecting the Method

In the Sixth Circuit, it is within the discretion of the district court to decide which method to use in a given case. *Bowling*, 102 F.3d at 779; *Rawlings*, 9 F.3d at 516. The percentage-of-the-fund method, however, clearly appears to have become the preferred method in common fund cases. *Stanley*, *supra*; *see* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7; J. Empirical Legal Stud. 811, 832 (December, 2010).

As noted above, plaintiffs urge the Court to award a percentage of the common fund in this case. Although the Court acknowledges its discretion to use the lodestar method, the Court finds that the percentage-of-the-fund method is the more appropriate method in this case, especially when employed with a lodestar cross-check. Here, a substantial common fund has been established for the benefit of class members through the efforts of class counsel. Given the commitment of time and resources committed by class counsel and the complexity of this litigation, it simply would not have been practicable for individual members of this class to pursue litigation challenging the alleged illegal conduct in this case. Given the clear trend in the Sixth Circuit and the Court's belief that the percentage-of-the-fund method, when employed in connection with a lodestar cross-check, accounts for both the amount of the work done and reflects the results achieved by class counsel,

4

this Court will use the percentage-of-the funds method and a lodestar cross-check.[3] In addition, given the number of hours expended by counsel in this case (approximately 127,000) use of a percentage-of-the-fund method here is much more efficient and less time consuming for the Court to administer.

**2.      The Reasonableness of the Requested Fee**

As noted above, the attorneys' fees requested represent one-third of the settlement fund. Although the total fee requested is a very large amount ($52,866,667, for a total fee award of $101,200,000 when combined with the previously awarded fees of $48,333,333), the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit. *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (approving an award of 33 percent, including costs and expenses, and noting that "[e]mpirical studies show that . . . fee awards in class actions average around one-third of recovery") (quoting *Shaw v. Toshiba America Inf. Sys., Inc*. 91 F.Supp.2d 942, 972 (E.D. Tex. 2000)); *Worthington v. CDW Corp*. 2006 U.S. Dist. LEXIS 23100, at *22 (S.D. Ohio May 22, 2006); MCL § 14.121 ("[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund."); *see also* Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?* 158 U. Pa. L. Rev. 2043, 2063 (2010) ("although the mean and median fee awards in federal court are 25%, there are many awards at the 33% level, ...").

In the Sixth Circuit, several factors have been identified for consideration in

---

[3] Counsel have provided to the Court summary schedules indicating the number of hours spent by the attorneys involved in this litigation and the lodestar calculation based on historical billing rates. Those schedules were prepared from contemporaneous time records not produced by counsel. Unlike the situation when the Court employs the lodestar method in full, "the hours documented by counsel need not be exhaustively scrutinized by the district court" where a lodestar cross-check is used. *In re WorldCom Sec. Litig.*, 388 F. Supp.2d 319, 355 (S.D.N.Y. 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

5

determining the reasonableness of the requested fee. These include:

> (1) the value of the benefit rendered to the plaintiff class . . . ; (2) the value of services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Bowling,* 102 F.3d at 780. *See also Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

All of the relevant factors here support the requested fee. First, the result obtained by counsel for the plaintiff class is extraordinary and will result in an average total cash payment to each class member of more than $25,000 after payment of attorneys' fees, out of pocket expenses and incentive awards to class representatives. The total settlement, when combined with the prior settlement, is over 70% of the total damages calculated by plaintiffs' damages expert.[4][5] In addition, the settlement will result in very significant structural changes in the way milk is marketed in the future in the Southeast. The structural changes agreed to by DFA go to the very heart of some of the challenged conduct in this case, such as the use of full supply agreements, and will almost certainly result in increased uniform milk prices in Orders 5 and 7. DFA members will have greater access to information about DFA's operations and greater ability to terminate their membership agreements with DFA. The dollar value of these significant structural changes cannot be reasonably estimated; however, there is no doubt they address many of the concerns voiced by dairy farmers and the lone objection to the Dean settlement. The overall value of the settlement to the class is further illustrated

---

[4] Plaintiffs claim the settlement is likely the largest settlement of any antitrust case litigated in this district. Although the Court has not attempted to confirm the accuracy of that claim, the Court is not aware of any settlement for a larger amount.

[5] The Court has not considered the possibility of treble damages. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009).

Case 2:10-mc-00011   Document 9   Filed 05/17/13   Page 6 of 16   PageID #: 308

by the relative lack of objections from class members to the requested fees. Of the more than 7000 members of the class, none objected to the settlement, and that only three have voiced objection to the requested fees. Their objections will be discussed below.

Second, there is absolutely no question that counsel has spent a remarkable amount of time preparing and litigating this case-- more than 126,000 hours of legal work. Counsel spent a year investigating the antitrust allegations, consulting experts and mapping strategy before filing suit. The case has been extensively and vigorously litigated for more than five years and all defendants, especially those now settling, have aggressively defended the suit. Counsel has reviewed and organized over 5,000,000 pages of documents and multiple motions to compel discovery have been litigated. Over 100 depositions have been conducted, including those of numerous plaintiff and defense experts. The Court's docket entries for the case are approaching 2,000, fully illustrating the extensive nature of the legal work done, from the initial motions to dismiss through the summary judgment stage and extensive litigation of a host of other pretrial motions. Counsel have participated in extensive and lengthy court ordered mediation sessions, as well as settlement discussions with defendants. There have been two requests for interlocutory appeal to the Sixth Circuit, requiring extensive briefing in that court. The quality of the work done by class counsel has been exceptional, not only with respect to the pleadings filed but also the oral advocacy during oral argument on various motions.

Using the lodestar method as a cross-check on the reasonableness of the requested fee likewise supports the award of fees requested. As noted above, counsel spent nearly 127,000 hours on this case, which, when multiplied by a reasonable hourly rate, results in a lodestar of $56,126,310.17, combined with the fees previously awarded. The requested fee represents a lodestar

7

multiplier of 1.90, clearly within, but in the bottom half of, the range of typical lodestar multipliers. *See In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp.2d 752, 767 (S.D. Ohio 2007) (typical lodestar in large securities class actions ranges from 1.3 to 4.5); *Newberg on Class Action* § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."). *See also In re TFT-LCD* (Fleet Panel) Antitrust Litig., 2013 WL 1365900 (N.D. Cal. April 3, 2013) (awarding $309,725,250 in attorney's fees to class counsel, 28.63 percent of the settlement fund and employing a lodestar multiplier averaging 2.4-2.6 as a "cross-check"). It is also worth noting that class counsel seek no fees related to the structural relief achieved by the settlement, except for the $18.6 million to be paid into the settlement escrow fund to guarantee the DFA defendants' promise to increase uniform prices to farmers in Orders 5 and 7 in calendar years 2014-2015.

The complexity of the litigation also supports the requested fees. This Court has observed several times the complexity of the case. Almost every aspect of this case has been hotly contested and litigated extensively and the case presents several somewhat novel issues. The complexity of the case is further illustrated by the number of pages of documents produced, as noted above, a list of potential trial exhibits that numbers in the thousands and literally hundreds of potential witnesses who have been interviewed and/or deposed in preparation for trial. Class counsel, who have extensive experience in complex class action litigation, have efficiently and competently managed their enormous task and have vigorously and effectively prosecuted the case on behalf of the class. They have also been opposed by equally experienced and highly competent counsel for defendants and have achieved an excellent result for their clients.

Furthermore, counsel undertook this case on a contingency-fee basis and accepted

8

Case 2:10-mc-00011   Document 9   Filed 05/17/13   Page 8 of 16   PageID #: 310

a substantial risk of non-payment for legal work and reimbursement of out-of-pocket expenses advanced. This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee. Not only did counsel risk not being paid for more than $53 million in legal work, they also ran the risk of losing nearly $8.2 million in out-of-pocket expenses. If counsel are not rewarded for this risk, few attorneys will undertake "the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988). Indeed, it was represented to the Court at the hearing that "not every firm wanted the milk case" given the enormous commitment of time and money required and the attendant risk.

Finally, failing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in the private litigation of antitrust cases. Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws.").

Simply put, anti-competitive conduct such as that alleged in this case would likely go unchallenged absent the willingness of attorneys to undertake the risks associated with such expensive and complex litigation. No single class member could have undertaken the litigation prosecuted here on his own. The sheer size of the outlay for out-of-pocket expenses by class counsel illustrates one of the reasons why. Awards of substantial attorneys' fees in cases like this are

9

necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties.

Finally, the issues raised by the objectors need to be addressed. The class notices mailed informed the entire class that plaintiffs "will ask the Court for one-third of the settlement funds in attorneys' fees, plus reimbursement of the costs and expenses . . . ." In response, the Court received two letters from class members regarding plaintiffs' requests for attorneys' fees. One, [Doc. 1928], from Weldon J. Keiger of Tobaccoville, North Carolina, opines that $52.86 million in attorneys' fees "is obscenely excessive" and a "huge amount of money per lawyer," especially when considered in the context of the amount of attorneys' fees already awarded from the Dean settlement. Keiger asked the Court to consider providing more of the settlement fund to the dairy farmers of the Southeast and awarding a "reasonable" fee of "10-12 percent."

The second letter, [Doc. 1930], from Tom Mareth, T&M Dairy, LLC, refers to plaintiffs' request as "excessive" and "double billing for work already done . . . given they have been compensated once" (presumably referring to the prior award of fees from the Dean settlement). Mr. Mareth acknowledges, however, that he is "not privy to all the dealings necessary on behalf of the attorneys." A third class member, Craig Frazier, and one of the DFA member subclass representatives, made an oral objection of a different sort at the Court's April 3 hearing. Mr. Frazier claims that his fee agreement with counsel was for one-third of the ***net*** settlement, *i.e.* after payment of expenses, not one-third of the settlement before deduction of counsels' out-of-pocket expenses.

Plaintiffs' respond to the letters of Mr. Keiger and Mr. Mareth that the letters do not constitute a "cognizable objection to a request for attorneys' fees," and that such generalized objections do not suffice, citing *McLennan v. LG Elecs. USA, Inc.*, 2012 WL 686020, at *8 (D. N.J.

10

March 2, 2012). Plaintiffs suggest that such generalized objections should be summarily overruled. Plaintiffs may be correct as a legal matter; however, the Court, as a matter of basic fairness, will consider the letters as objections from members of the class worthy of consideration.

Mr. Mareth's reference to "double billing" is interpreted by the Court as an argument that counsel should receive a lower fee than their contingency agreement provides because they have already "been compensated once," that is, from the Dean/SMA/Baird settlement. It is true that the prior award of fees from the earlier settlement comes close to compensating counsel for their substantial investment of time and advanced expenses in the case, considering only their lodestar. Such an approach, however, is flawed from both a legal and policy perspective.

Other courts have considered similar requests for an award of attorney's fees based on successive settlements with different defendants. In *Lobatz v. U.S. West Celluar of California, Inc.*, 222 F.3d 1142 (9th Cir. 2000), the Ninth Circuit considered and rejected a very similar claim. There, the objector argued that fees for a second settlement two years after the first should be awarded by reference to counsel's time spent on the case after the first settlement and not for the time spent on the entire litigation. The Ninth Circuit correctly disagreed and affirmed the district court's award of fees by considering all of the litigation effort, and cross-checking the fees requested with a lodestar multiplier, while subtracting the fees counsel had been paid from the first settlement. *Id.* at 1149-50. *See also In re Insurance Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D. N.J. March 30, 2012) (calculating attorney's fees from second settlement based on total lodestar for entire litigation). The same legal principles apply to Mr. Keiger's suggestion that 10-12 percent of the current settlement is a reasonable attorney's fee.

The approach taken by Mr. Mareth and Mr. Keiger is likewise flawed from a policy

11

perspective. First, if an award of fees for a successive settlement were limited and calculated only on the basis of time and expenses incurred since the preceding settlement, counsel would have little or no incentive to vigorously or efficiently pursue litigation or settlement of claims with non-settling defendants, or to seek non-monetary relief, even though the remaining defendants might be equally as culpable or have greater culpability. Secondly, such an approach would effectively eliminate consideration of the risk taken by counsel who take on these kind of cases where liability is hotly contested and the chances of recovery uncertain. Here, as plaintiffs point out, counsel invested very significant time worth $53,126,310 if compensated at usual hourly rates plus $8,207,158 in out-of-pocket expenses with no guarantee of recovery or return. Plaintiffs correctly point out that no law firm, or association of firms, would chance over $61,000,000 million pursuing risky, complex and lengthy litigation if the possibility of return was less than or only equal to the amount invested. In other words, counsel should be rewarded commensurate with the risk taken.

The objection made by Mr. Frazier at the April 3 hearing is different. Mr. Frazier, one of the class representatives for the DFA member subclass, while expressing some concern about the settlement because it gives up the breach of contract claims originally asserted by plaintiffs, nonetheless expressed his comfort with the "compromise" agreement. He did argue, however, that the attorneys' fee award should be based on the net settlement after deduction of out-of-pocket expenses, consistent with the contingency contract he believed he signed with class counsel. The contract, delivered to chambers for *in camera* review, does not support Mr. Frazier's recollection. The contract clearly and unambiguously provides for a contingency fee "not to exceed 33 1/3 percent by all counsel" of the "total amount recovered." The contract further provides that "costs and expenses are to be paid out of the recovery after deduction of attorney's fees." This part of Mr.

12

Frazier's objection lacks merit. Mr. Frazier also claimed that some hours[6], in particular those invested by counsel appointed by the Court to represent the DFA member subclass, were unnecessary and caused by original counsel's failure to recognize the potential conflict of interest by counsel representing both subclasses. That development in the case was not entirely foreseeable, however, at an earlier stage of the litigation, and is not a proper basis for reducing the requested fees. Even if the Court disregarded the hours spent on the case by court appointed counsel for the DFA member subclass, it would only slightly change the lodestar and would not otherwise affect the Court's decision on the fee award.

One more thing should be addressed. Some studies have identified the size of the underlying class action settlement as the factor with the most influence on the fee and have found an inverse relationship between fee percentage and size of the settlement fund. *See* Fitzpatrick, *Do Class Action Lawyers Make too Little?*, at 2055 (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees In Class Action Settlements: An Empirical Study, 1* J. Empirical Legal Stud. 27, 35-36 (2004)). Indeed, it is fairly widely recognized that lower percentages are often appropriate in cases in which large settlements serve as the basis for calculating a percentage. MCL, § 14.121 (citing *In re Prudential Ins. Co. of Amer. Sales Practices Litig.* 148 F.3d 283, 339-40 (3d Cir. 1998) (remanding award of 6.7% of common fund for further consideration "in light of the magnitude of the recovery")). In cases involving settlements exceeding 100,000,000, fee percentages have ranged from 4.1% to 17.92%. *Id.*

This Court finds, however, that such an inverse approach would not be appropriate

---

[6] Mr. Frazier stated that the number of hours was 4,800; however, the declaration submitted by Gary E. Brewer, Esquire, clarifies that about 500 of these hours were attributable to time spent by "other professionals" and generally paid at a much lower hourly rate.

in this case for several reasons. First, the Court has not found any Sixth Circuit case endorsing such an approach. Second, a declining percentage-of-the fund based on the size of the settlement "can create an incentive to settle quickly and cheaply when the returns to effort are highest" and discourage counsel from "investing additional time and maximizing plaintiffs' recovery." *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 80 (S.D. N.Y. 2000). In addition, the Court sees no good reason why class action lawyers who represent clients on a contingency-fee basis in a case such as this should receive lower fees on a percentage basis than due contingency-fee lawyers in litigation representing individual clients, which typically amount to 33% or more of the recovery. Lastly, such an approach would penalize these class action attorneys given the actual number of hours spent on the case, rather than compensate them fairly. In other words, the requested fees do not result in an excessive windfall for class counsel.[7]

After consideration of all these factors and the entire and lengthy record of this complex litigation, the Court concludes that, although the requested fee is a very, very substantial amount, it is fair and reasonable under the circumstances. Accordingly, the Court will approve the requested fees in the amount of thirty-three and one-third percent (33 1/3%) of the common fund, i.e. $52,866,667 and will authorize lead counsel to allocate fees to specific firms.[8]

**B.    Reimbursement of Expenses**

In addition to their petition for attorney's fees, class counsel seek reimbursement of out-of-

---

[7] The Court acknowledges that it has been bothered somwhat by the sheer size of the fee awarded and the need for the dairy farmers class members to receive the maximum possible amount of money, especially in view of the difficult economic environment in which they toil. The Court has ultimately decided, however, that it is not the size of the request, although a very large number, that is necessarily relevant but the size of the award when compared to the size of the risk taken.

[8] The Court, of course, retains jurisdiction to resolve any fee disputes which may arise.

pocket expenses incurred during the representation of the class in the additional amount of $798,237.66. "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *See In re F & M Distributors*, *Inc.,* 19 U.S. Dist. LEXIS 11090, at *19 (E.D. Mich. June 29, 1999). Based upon the Court's review of the various declarations submitted by class counsel, it appears that the requested expenses are the type typically billed by attorneys to paying clients in similar cases, *see In re Synthroid Marketing Litig*., 264 F.3d 712, 722 (7th Cir. 2001), and are fair and reasonable under the circumstances of this case. Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred but rather an aggregate listing of the expenses for each category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of $798,237.66 as reimbursement for their out-of-pocket expenses.

### C. Incentive Awards to Class Representatives

Plaintiffs request that the Court approve additional incentive awards for the sixteen (16) class representatives in the amount of $10,000 each. "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g. Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009) (citations omitted). Based on this Court's knowledge of these lengthy proceedings, it appears that the class representatives have had extensive involvement in this litigation and deserve compensation above and beyond the amounts they will be entitled to by virtue of class membership

alone.[9] They have been crucial in the preparation of the case and the requested incentive awards are reasonable in light of other incentive awards approved by courts in this circuit. *See Hainey v. Parrott*, 2007 WL 3308027 at * 5 (S.D. Ohio Nov. 6, 2007) (approving $50,000 incentive awards); *Worthington*, 2006 U.S. Dist. LEXIS 32100, at *24 (approving $10,000 incentive awards); *In re F&M Distributors*, 1999 U.S. Dist. LEXIS 11090, at * 20-21 (approving $2,500 incentive awards).

**III.    Conclusion**

For all the foregoing reasons, plaintiffs' motion for award of attorneys' fees, reimbursement of expenses, and incentive awards for class representatives, [Doc. 1926], will be GRANTED and the Court will award $52,866,667 in attorneys' fees, reimbursement for out-of-pocket expenses in the amount of $798,237.66, and $10,000.00 as an incentive award to each of the class representatives.  The clerk is ORDERED to mail a copy of this order to Mr. Keiger, Mr. Mareth and Mr. Frazier.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

---

[9] No affidavits or other documentation have been submitted in support of the incentive award request. Class representatives, however, have clearly been extensively involved in the litigation, settlement discussions and court proceedings and have committed substantial time to the case as confirmed by the Court's own observations. *See also* Declaration of Robert G. Abrams, [Doc. 1927]. ("During the litigation, class representatives have communicated with class counsel regarding case issues, produced documents and information, been deposed, and prepared for trial.")